Christina J. Moser (199027)
BAKER & HOSTETLER LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114-1214
Telephone: 216.621.0200
Facsimile: 216.696.0740

Teresa C. Chow (237694)
BAKER & HOSTETLER LLP
11601 Wilshire Boulevard
Suite 1400
Los Angeles, CA 90025-0509
Telephone: 310.820.8800
Facsimile: 310.820.8859

William C. Bergmann (admitted *pro hac vice*)
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, NW
Suite 1100
Washington, D.C. 20036-5403
Telephone: 202.861.1549
Facsimile: 202.861.1783
Email: cmoser@bakerlaw.com
tchow@bakerlaw.com
wbermann@bakerlaw.com

Attorneys for Plaintiffs Bragi GmbH,
Bragi Store, LLC, and Bragi North America, LLC

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Bragi GmbH, Bragi Store, LLC, and Bragi North America, LLC<br><br>Plaintiffs,<br><br>vs.<br><br>OnePlus Technology (Shenzhen) Co., Ltd,<br><br>Defendant. | CASE NO.: 4:18-CV-02972-SBA<br><br>**SUPPLEMENTAL DECLARATION OF NIKOLAJ HVIID IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT**<br><br>**Judge: Saundra Brown Armstrong**<br><br>**Hearing Date: December 12, 2018**<br>**Time: 2 pm**<br>**Place: 1301 Clay St., Oakland** |

I, Nikolaj Hviid, do declare as follows:

1.     I am the founder and CEO of Bragi GmbH. I am authorized to make this Supplemental Declaration on behalf of the plaintiffs in the above-action. This declaration is based on my personal knowledge and on the regularly maintained records of the plaintiffs.

2.     I am informed that, in or around February 2017, Bragi and T-Mobile were discussing whether Bragi would purchase T-Mobile's registration for DASH in connection with mobile phones. Bragi decided not to purchase the registration at the time. I note that there is no indication on T-Mobile's website or elsewhere that T-Mobile was actually using the mark at the time Bragi adopted the Bragi Marks, or any time thereafter.

3.     At the time Bragi filed its U.S. trademark application for THE DASH, it had a bona fide intent to use the mark in connection with all of the goods identified in the trademark applications. The list of goods in Bragi's trademark application for THE DASH describes goods that Bragi actually offers, goods for which Bragi planned (and still plans) to license use of the mark because they are complementary to Bragi's hearable device, and/or goods that Bragi believed at the time (and still believes) it can offer with its hearable device. Many of these features are described in Bragi's patents and patent applications. Moreover, the application is based on Bragi's European trademark application, so the language used to describe the goods may seem awkward to American ears.

4.     I understand that OnePlus claims that my Declaration did not disclose Bragi's U.S. sales or market share. The figure cited in my Declaration ($21,000,000) <u>is</u> for U.S. sales. Moreover, competitors did not start to come out with "truly wireless" earphones until August of 2016, so Bragi's share of the market prior to that time was 100%. While Apple has of course assumed most of the truly wireless earphone market due to its dominance of the smartphone market since launching its AirPods in late 2016, Bragi's earphones still offer features that no other competitor

can match, including water resistance and other in-demand features. With respect to Bragi's $1 million in advertising, for the specialized hearables market, Bragi's advertising expenditures are significant. During this time, Bragi also has relied on its mentions in industry publications and its marketing at trade shows to publicize the products bearing the Bragi Marks. Moreover, because of the nature of the market, Bragi's advertising spend outside the United States, which has been about $3,000,000, tends to bleed into, or have a positive impact, on U.S. recognition.

5. OnePlus also claims that Bragi simply sells its products online. This is incorrect. As noted in my Declaration, Bragi has also sold products using the Bragi Marks asserted in this lawsuit in brick and mortar stores (some of which also have e-commerce websites), such as Best Buy and phone carrier stores. Only about 5% of U.S. sales are through Bragi's own website. Of the remaining U.S. sales, about 15-20% are through Amazon, and the remainder are through third party retailers that also have brick and mortar stores.

6. I understand that OnePlus also has claimed that Bragi only recently began using "The Dash Charge" to describe its chargers. This is incorrect. "Charger" is the actual generic name of the product, which is designated by Bragi using the trademark THE DASH. Accordingly, the phrase describing the Bragi charger is and has always been "The Dash Charger."

7. During 2016 and 2017, Bragi was confronting the blatant, intentional infringement of the Bragi Marks by another Chinese company, Axgio. Because Axgio was using both THE DASH and THE DASH PRO marks on its wireless earbuds being marketed in direct competition with Bragi, Bragi had to prioritize its resources to address that infringement. During this period, Bragi took action to block OnePlus' attempts to register the infringing mark in Europe and the United States. Bragi also learned through this process how difficult it is to enforce intellectual property rights against a company that ships product to the U.S. from China but does not have a physical presence in the territory.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

1  I declare under penalty of perjury pursuant to the laws of the United States that the
2  foregoing is true and correct.

4  Dated: November 13, 2018



_____
Nikolaj Hviid