UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| Bragi GmbH, Bragi Store, LLC, and Bragi North America, LLC,<br><br>    Plaintiffs,<br><br>vs.<br><br>OnePlus Technology (Shenzhen) Co., Ltd.,<br><br>    Defendants. | Case No: C 18-2972 SBA<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Dkt. 40 |

    Plaintiffs Bragi GmbH, Bragi Store, LLC, and Bragi North America, LLC (collectively "Bragi") bring the instant trademark infringement action under the Lanham Act, 15 U.S.C. § 1125, against Defendant OnePlus Technology (Shenzhen) Co., Ltd. ("OnePlus"). The Court has subject matter jurisdiction, pursuant to 28 U.S.C. §§ 1331 and 1332. This matter is now before the Court on Bragi's Motion for Preliminary Injunction, which seeks to enjoin OnePlus from using its registered trademarks, THE DASH and/or THE DASH CHARGE (collectively "the Marks"), during the pendency of this lawsuit. Having read and considered the papers submitted in connection with his matter, and being fully informed, the Court DENIES Bragi's motion. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

I. **BACKGROUND**

    A. **FACTUAL OVERVIEW**

        1. **Bragi**

Bragi GmbH is a German limited liability company based in Munich and is the parent entity of two U.S. subsidiaries, Bragi Store, LLC ("Bragi Store") and Bragi North America, LLC. Compl. ¶¶ 1, 2, Dkt. 1. In 2014, Bragi Store launched a Kickstarter campaign to introduce its new wireless earphone called "The Dash." Rosen Decl. Ex. 1, Dkt. 40-1; Hviid Decl. ¶ 2, Dkt. 42. The Dash retails from between $149 to $599. Moser Decl. Ex. 1, Dkt. 40-1; id. Ex. 2, Dkt. 40-2 at 6. The earphones come with a charging unit styled as "The Dash Charger," which is a black custom fit container specifically designed to charge The Dash earphones. Id.



The Dash (Earphones)    The Dash Charger

Moser Decl. Ex. 2, Dkt. 40-2 at 3, 5

Bragi GmbH registered THE DASH as a trademark with the United States Patent and Trademark Office ("USPTO") on October 20, 2015. Moser Decl. Ex. 3, Dkt. 40-3. On March 13, 2018, the USPTO granted Bragi GmbH's application to register THE DASH PRO. Id. Ex. 4. Bragi Store is the exclusive licensee of the Marks. Compl. ¶ 3.

Since 2014, Bragi has spent over $1 million promoting its products through unspecified trade shows, charity and sporting events and on-line advertising. Hviid Decl. ¶ 6, Dkt. 42. Aggregate Bragi sales in the United States exceed $21 million. Id. The majority of Bragi's domestic sales are through Amazon and a variety of brick and mortar

retailers, such as Best Buy and Costco, among others.  Id.  Bragi also markets and distributes its products through its own website and through Verizon and AT&T stores.  Id.

### 2. OnePlus

Founded in 2013, OnePlus is a smartphone manufacturer based in China.  Mehaffy Decl. ¶ 3, Dkt. 45-1.  In 2014, OnePlus launched its first phone, the OnePlus One, and has subsequently issued various iterations thereof.  Id. ¶ 4.  Beginning in 2016, OnePlus began branding the charger that accompanies its phones as the "OnePlus 3 Dash Charge."  Id. ¶ 18.  The charging apparatus consists of a red USB-C cable that connects to a white adapter that, in turn, plugs into an electrical outlet.  Id.  OnePlus's stylized "Dash" mark as well as OnePlus's "1+" logo are imprinted on the cable and the adapter.  Id. ¶¶ 20, 21.



OnePlus Dash Charge (adapter and USB-C cable)
Mehaffy Decl. Exs. 20, 21 (1+ mark annotated for emphasis)

OnePlus distributes the vast majority of its products primarily through its own website, with a relatively small amount of sales made through third-party on-line retailers such as Amazon.  Id. ¶ 23.  Prices for the current OnePlus smartphone, the OnePlus 6, range from $529 to $629.  Gray Decl. Ex. 30, Dkt. 47-10.

### 3. Cease and Desist Letter

On or about July 15, 2016, Bragi, through counsel, sent OnePlus a cease and desist letter. Rosen Decl. Ex. 18, Dkt. 41-2. In the letter, Bragi alleged that OnePlus's "Dash Charge" was "confusingly similar" to THE DASH mark. Id. Bragi demanded that OnePlus "cease all infringing activity" and warned that it "will be monitoring" OnePlus's activities. Id.

On July 27, 2016, OnePlus responded in writing to Bragi, denying prior knowledge of Bragi's THE DASH mark. Mehaffy Decl. Ex. B, Dkt. 45-4. In addition, OnePlus pointed out that its use of "Dash" was "visually, phonetically and conceptually different from [Bragi's] mark." Id. OnePlus did not receive any further communication from Bragi regarding its alleged infringement of THE DASH mark until April 2018, when Bragi's Chief Executive Officer "began corresponding with OnePlus and OnePlus's counsel." Id. ¶¶ 14, 15.

### B. PROCEDURAL HISTORY

On April 18, 2018, Bragi filed the instant action against OnePlus in this Court. The Complaint alleges that OnePlus's continued use of "Dash" on its phone charger infringes upon Bragi's rights in the Marks (i.e., THE DASH and THE DASH PRO). Three claims are alleged: (1) trademark infringement under the Lanham Act (brought on behalf of all Plaintiffs); (2) trademark infringement under the Lanham Act (brought on behalf of Bragi GmbH); and (3) violation of the California Unfair Competition law, Cal. Bus. & Prof. Code § 17200 et seq., (brought on behalf of all Plaintiffs).

On October 22, 2018, Bragi filed the instant motion, seeking to preliminarily enjoin OnePlus "from continued infringement of Bragi's THE DASH and THE DASH PRO trademarks … and, specifically, from expanding the scope of its infringement with its imminent launch of new products through the same marketing channels as Bragi." Dkt. 40 at 2. The "imminent launch" referred to by Bragi pertains to OnePlus's newly-formed partnership with T-Mobile, which will allow OnePlus to sell its products through T-Mobile. OnePlus opposes the motion on a number of grounds, including that Bragi has failed to

demonstrate a likelihood of success. In addition, OnePlus contends that Bragi has not shown that it will suffer immediate, irreparable harm, especially since it will not use the Marks in connection with the sale of its products through T-Mobile.[1]

## II. LEGAL STANDARD

To obtain a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in the moving party's favor; and (4) that an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief[.]" Id. at 22. The moving party bears the burden of meeting all prongs of the Winter test. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011). The decision of whether to grant or deny a preliminary injunction is a matter of the district court's equitable discretion. Winter, 555 U.S. at 32.

## III. DISCUSSION

### A. LIKELIHOOD OF SUCCESS

"[A] claim for trademark infringement requires only two elements: (1) ownership of a trademark, and (2) that the plaintiff show a likelihood of confusion through the balancing of eight factors." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1072 (9th Cir. 2014). "The core element of trademark infringement is the likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse customers about the source of the products." Abercrombie & Fitch Co. v. Moose Creek, Inc., 486 F.3d 629, 633

---

[1] In accordance with Civil Local Rule 7-3(d), OnePlus objects to new evidence that Bragi submitted with its reply brief. Dkt. 52. Generally, the submission of new evidence with a reply brief is improper. See Dutta v. State Farm Mut. Auto. Ins. Co., 895 F.3d 1166, 1172 (9th Cir. 2018). However, because the newly-asserted evidence is not material to the Court's ruling, the Court need not reach OnePlus's objections.

(9th Cir. 2007).² There are "two theories of consumer confusion that support a claim of trademark infringement: forward confusion and reverse confusion." Marketquest Grp., Inc. v. BIC Corp., 862 F.3d 927, 932 (9th Cir. 2017). "Forward confusion occurs when consumers believe that goods bearing the junior mark came from, or were sponsored by, the senior mark holder." JL Beverage Co., LLC v. Jim Beam Brands Co., 828 F.3d 1098, 1106 (9th Cir. 2016). "Reverse confusion, on the other hand, 'occurs when consumers dealing with the senior mark holder believe that they are doing business with the junior one.'" Id. (citation omitted).

In this Circuit, district courts analyze the likelihood of confusion by considering eight factors, commonly referred to as the "Sleekcraft factors." AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348 (9th Cir. 1979), abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792 (9th Cir. 2003). These factors are: (1) the strength of the mark; (2) the proximity or relatedness of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. Id. at 348-49. This list is non-exhaustive, and depending on the case, some factors may be more important than others. Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1054 (9th Cir. 1999).

### 1. Strength of the Mark

The strength of a mark determines the amount of legal protection to which the mark is entitled. Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1141 (9th Cir. 2002). This inquiry requires an examination of the mark's conceptual and commercial strength. Network Automation, Inc. v. Advanced Sys. Concepts, Inc., 638 F.3d 1137, 1149 (9th Cir. 2011). From a conceptual standpoint, "[t]he strength of a mark is determined by its

---

² Though it does not dispute that Bragi owns the Marks, OnePlus contends that Bragi obtained them "improperly" from the USPTO and therefore the Marks should be cancelled. Dkt. 45 at 16. Resolution of that argument is unnecessary to determine the instant motion, however.

placement on a continuum of marks from generic, afforded no protection; through descriptive or suggestive, given moderate protection; to arbitrary or fanciful awarded maximum protection." E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1291 (9th Cir. 1992). After examining a mark's conceptual strength, courts consider the mark's commercial strength, which "is based on actual marketplace recognition." JL Beverage Co., LLC, 828 F.3d at 1107 (quoting in part Network Automation, 638 F.3d at 1149).

Bragi and OnePlus agree that the Marks are suggestive. Dkt. 40 at 10. A suggestive mark is "inherently" and "presumptively" weak. See Am. Int'l Grp., Inc. v. Am. Int'l Bank, 926 F.2d 829, 832 (9th Cir. 1991); accord Brookfield, 174 F.3d at 1058 ("[S]uggestive marks are presumptively weak"). However, the Ninth Circuit "has previously recognized that a suggestive or descriptive mark, which is conceptually weak, can have its overall strength as a mark bolstered by its commercial success." M2 Software, Inc. v. Madacy Entm't, 421 F.3d 1073, 1081 (9th Cir. 2005). Commercial success or strength is shown by actual marketplace recognition. Network Automation, 638 F.2d at 1149.

Bragi contends that the commercial strength of the Marks is exemplified by the fact that, since 2014, it has spent $1 million on advertising "through trade shows, charity and sporting events like the Boston Marathon, and online advertising." See Hviid Decl. ¶ 6, Dkt. 42. However, extensive advertising alone is insufficient to "transform a suggestive mark into a strong one." Nutri/System, Inc. v. Con-Stan Indus., Inc., 809 F.2d 601, 605 (9th Cir. 1987). Rather, advertising expenditures are germane when coupled with evidence of marketplace recognition. See Brookfield, 174 F.3d at 1058 (holding that "advertising expenditures can transform a suggestive mark into a strong mark, where, for example, that mark has achieved actual marketplace recognition"). In this case, Bragi has not presented any evidence to demonstrate marketplace recognition. E.g., Allstate Ins. Co. v. Kia Motors Am., Inc., No. CV166108SJOAGRX, 2017 WL 6550669, at *10 (C.D. Cal. Dec. 22, 2017) (finding the fact that while the plaintiff spent $47 million in advertising, that expenditure was not particularly probative of commercial success in the absence of expert testimony or

consumer research or regarding the strength of the mark at issue). Bragi points out that it has generated $21 million in sales since 2014. However, there is evidence that the marketplace is crowded by other major-name competitors, such as Apple, which controls 85 percent of the market for wireless earphones. Gray Decl. Ex. 29, Dkt. 47-9. Thus, without additional information—such as Bragi's market share—it is difficult to place Bragi's four-year sales figure in context for purposes of assessing marketplace recognition.[3]

In view of Bragi's questionable showing of commercial success, the Court finds that Bragi has not overcome the presumption that its suggestive marks are weak. The Court finds that the first Sleekcraft factor favors OnePlus.[4]

### 2. Proximity or Relatedness of Goods

Proximity of the goods is measured by the relatedness of the goods—specifically, proximity is measured by evaluating whether the goods are "(1) complementary; (2) sold to the same class of purchasers; and (3) similar in use and function." Network Automation, 638 F.3d at 1150. "Related goods are those products which would be reasonably thought by the buying public to come from the same source if sold under the same mark." adidas Am., Inc. v. Skechers USA, Inc., 890 F.3d 747, 755 (9th Cir. 2018) (internal quotations and citation omitted). "Complementary products, or services, are particularly vulnerable to confusion." Sleekcraft, 599 F.2d at 350 (internal quotations and citation omitted).

---

[3] Bragi also claims that users on the OnePlus Forum (an on-line bulletin board) have referred to Bragi's product by name, thereby demonstrating "instant name recognition." Dkt. 49 at 8. However, the remarks of a few users are, at best, anecdotal evidence which is not particularly compelling evidence of marketplace recognition.

[4] OnePlus also contends that THE DASH and THE DASH CHARGE marks are part of a "crowded field" of electronic products—including smart phones, battery chargers and pedometers—that also incorporate "Dash" into their product name. Dkt. 45 at 10-11; see also Rosen Decl. Ex. 10, Dkt. 40-10 at 4 (news article noting that Amazon uses "Dash" as the brand name for wireless electronic buttons that consumers can use to order predefined items). "When similar marks permeate the marketplace, the strength of the mark decreases. In a crowded field of similar marks, each member of the crowd is relatively weak in its ability to prevent use by others in the crowd." One Indus., LLC v. Jim O'Neal Distrib., Inc., 578 F.3d 1154, 1164 (9th Cir. 2009). In its reply, Bragi counters that none of the other marks identified by OnePlus is presently in use. Dkt. 49 at 7. Because OnePlus has not had the opportunity to respond to Bragi's argument, however, the Court does not reach the issue of whether the field is sufficiently crowded to weaken the Marks.

The Court finds that the parties' respective chargers are not so closely related as to cause consumer confusion. It is true that the chargers are similar in that both serve to recharge each company's primary products; i.e., earphones and smartphones, respectively. But that is where the similarity ends. Bragi's charger is specifically designed to charge The Dash earphones, and nothing else. Because The Dash earphones can only be charged in The Dash Charger, OnePlus's charger is not compatible with them. Thus, a reasonable consumer would not purchase OnePlus's Dash Charger to charge Bragi's earphones. Nor would a reasonable consumer mistakenly purchase a OnePlus charger believing that Bragi and OnePlus's chargers are the same. In short, because the chargers are not cross-compatible, they are not complementary nor similar in use and overall function. This factor therefore weighs in favor of OnePlus.

### 3. Similarity of Marks

"Similarity of the marks is tested on three levels: sight, sound, and meaning." Sleekcraft, 599 F.2d at 351. The Ninth Circuit has developed "axioms" to guide the comparison: "1) Marks must be considered in their entirety as they appear in the marketplace; 2) Similarity is adjudged in terms of appearance, sound, and meaning; and, 3) Similarities weighed more heavily than differences." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1206 (9th Cir. 2000). "[T]he more similar the marks in terms of appearance, sound, and meaning, the greater the likelihood of confusion." Brookfield, 174 F.3d at 1054 (internal citations and quotation marks omitted). The "marks must be considered in their entirety and as they appear in the marketplace." GoTo.com, 202 F.3d at 1206.

The starting point for assessing the similarity of the marks is to compare the trademark in suit with the allegedly infringing mark. Brookfield, 174 F.3d at 1055. As noted, Bragi holds the trademark rights to THE DASH and THE DASH PRO, while OnePlus uses the mark "OnePlus Dash Charger." The parties' respective marks sound the same to the extent that both incorporate "Dash." OnePlus nonetheless argues that the lack of "THE" and "PRO" differentiate its mark from Bragi's. The flaw in that argument is that

the dominant part of Bragi's mark is the word "Dash," as opposed to "THE" or "PRO." Thus, OnePlus's omission of the less significant parts of Bragi's mark is not entitled to significant weight. See Grayson O Co. v. Agadir Int'l LLC, 856 F.3d 307, 317 (4th Cir. 2017) ("Courts give the dominant part of a mark more weight when assessing similarity because consumers are more likely to confuse marks with dominant similar features than marks with less noticeable similar features."). The "sound" subfactor therefore favors Bragi.

The above notwithstanding, the "appearance" subfactor favors OnePlus because the marks are visually dissimilar. Bragi's marketing and packaging material utilize the full name of the Marks in an initial cap style, non-distinctive font without the association of any particular logo. See Moser Decl. Ex. 2. In contrast, OnePlus's charger and corresponding USB-C cable display "DASH" in all caps in a block-style italicized font. The "D" in "DASH" is stylized with a lightning bolt integrated into the design of the letter. The OnePlus product packaging uses the OnePlus's distinct "1+" logo. See id. Ex. 32.



Bragi's "The Dash" Earphones

Moser Decl. Ex. 2



OnePlus Dash Charge (cable and adapter)

Moser Decl. Ex. 32



OnePlus Dash Charger (cable)

Moser Decl. Ex. 32.



**OnePlus Product Packaging**

Moser Decl. Ex. 32 (1+ mark annotated for emphasis)

Bragi makes no attempt to address the aforementioned visual distinctions, but asserts that OnePlus "rarely" uses the "Dash" mark with OnePlus's logo. Dkt. 40 at 17 (citing Moser Decl. Exs. 32, 33). As shown above, Exhibit 32 consists of several photographs of the OnePlus charger and cable, instruction booklet, and product packaging. While the adapter does not appear to display the 1+ logo, the logo appears on the cable that accompanies the adapter. In addition, both the cable and adapter bear the stylized "Dash" logo. The packaging materials prominently display the 1+ logo. Exhibit 33 is a screenshot from OnePlus's webstore that, in fact, displays the 1+ logo. Based on the evidence provided, the Court cannot conclude that OnePlus "rarely" uses its logo (or other uniquely identifying graphics) when using THE DASH mark.

The Court finds that there are significant distinctions in the parties' visual presentation of their respective marks that militate against a likelihood of confusion. See Surfvivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 633 (9th Cir. 2005) ("when a challenged mark is accompanied by the logo of the manufacturer, confusion is unlikely") (citing Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 487 (9th Cir. 1981)); Official Airline Guides, Inc. v. Goss, 6 F.3d 1385, 1392 (9th Cir. 1993) (taking into account the font and colors used in presenting the mark when assessing the similarity of the marks); Universal Money Centers, Inc. v. Am. Tel. & Tel. Co., 22 F.3d 1527, 1531

(10th Cir. 1994) ("Even assuming that the word 'Universal' is the dominant portion of AT & T's mark, the mark as a whole clearly is not 'confusingly similar' to UMC's marks [i.e., UNIVERSAL MONEY, UNIVERSAL MONEY CARD, and UNIVERSAL MONEY CENTER], especially in light of the distinctive AT & T house mark prominently displayed on the front of AT & T's card.").

In sum, the evidence shows that the parties' marks are similar in sound but are distinct in appearance. This factor is therefore neutral. See Surfvivor Media, 406 F.3d at 633 (holding that the "similarity of the marks" factor did not weigh in favor of either party where the marks sounded "nearly identical," but were different in appearance and meaning).[5]

### 4. Evidence of Actual Confusion

Evidence of actual confusion "is not necessary for a finding of *likelihood* of confusion, but it bears on the inquiry and is particularly potent." Stone Creek, Inc. v. Omnia Italian Design, Inc., 875 F.3d 426, 433 (9th Cir. 2017) (citing Sleekcraft, 599 F.2d at 352-53). Bragi has provided no evidence of actual consumer confusion. Accordingly, this factor weighs in favor of OnePlus. See One Indus., 578 F.3d at 1163 (determining that a lack of evidence of actual confusion weighed "against a finding of a likelihood of confusion").

### 5. Convergent Marketing Channels

"Convergent marketing channels increase the likelihood of confusion." Nutri/System, 809 F.2d at 606. Bragi claims that convergence is present, since "[b]oth parties market their products on-line, through industry specific publications and industry tradeshows." Dkt. 40 at 18. These contentions are uncompelling. The Ninth Circuit has downplayed the significance of the internet as a common marketing channel. See Network Automation, 638 F.3d at 1151 ("[I]t would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much

---

[5] The parties do not address the meaning of their marks.

- 12 -

light on the likelihood of consumer confusion."); Playboy Enters., Inc. v. Netscape Commc'ns Corp., 354 F.3d 1020, 1028 (9th Cir. 2004) (noting that the common use of the internet as a marketing channel "merits little weight" in light of the "broad use of the [i]nternet today"). In any event, the internet channels are largely separate, as OnePlus sells its products primarily through its own website. Second, with respect to the common publications, the evidence presented by Bragi consists of on-line third-party articles written about OnePlus's products, as opposed to actual advertising or marketing efforts *by* OnePlus. Finally, Bragi does not identify or proffer evidence regarding the allegedly overlapping trade shows.

In its reply, Bragi argues that market convergence is shown by the fact that both parties sell their products through Amazon and that searches for one party's product using Google or on Amazon generates references to both of their products.[6] Since Bragi did not make this argument in its moving papers, it is not properly before the Court. See Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). That aside, the Court finds Bragi's contention unpersuasive. No specific information has been provided to the Court regarding the amount of sales generated by either Bragi or OnePlus through Amazon. Without that information, it is difficult to assess the significance of any convergence. As for the overlapping search results, they are not probative of a likelihood of confusion. See Quia Corp. v. Mattel, Inc., No. C 10-1902 JF HRL, 2011 WL 2749576, at *3 (N.D. Cal. July 14, 2011) ("The mere fact that an internet search engine intermingles links to two products is not evidence of consumer confusion.") (citing cases); cf., Network Automation, 638 F.3d at 1149 ("because the sine qua non of trademark infringement is consumer confusion, when we examine initial interest confusion, the owner of the mark must demonstrate likely confusion, not mere diversion.").

---

[6] Bragi's evidence, Exhibits 36 and 37 to the Moser declaration, are print-outs of web searches on Google and Amazon using the search terms, "the Dash charger."

Bragi has not demonstrated the existence of convergent marketing channels. Therefore, the Court finds this factor to be neutral. See San Diego Comic Convention v. Dan Farr Prods., 336 F. Supp. 3d 1172 (S.D. Cal. 2018) (finding the marketing channels factor to be neutral where the overlap was based on the common use of the internet).

### 6. Degree of Customer Care

"In analyzing the degree of care that a consumer might exercise in purchasing the parties' goods, the question is whether a 'reasonably prudent consumer' would take the time to distinguish between the two product lines." Surfvivor Media, 406 F.3d at 634. Courts look both to the "relative sophistication of the relevant consumer," Fortune Dynamic, 618 F.3d at 1038, and the cost of the item, Brookfield, 174 F.3d at 1060, in determining the degree of care likely to be exercised by the purchaser. The more expensive the item, the more likely the consumer will exercise care in making a purchase decision. Brookfield, 174 F.3d at 1060 ("We expect [a reasonably prudent consumer] to be more discerning—and less easily confused—when he is purchasing expensive items…."). "On the other hand, when dealing with inexpensive products, customers are likely to exercise less care, thus making confusion more likely." Id.

Bragi acknowledges that the parties' products are "relatively expensive" and that OnePlus's customers are "sophisticated technologists" because they use the internet to purchase OnePlus products. Dkt. 40 at 16. As such, Bragi asserts that this factor is "neutral now." Id. However, the Court finds that the expense of the parties' products and concomitant customer sophistication, in fact, weigh in favor of OnePlus. A reasonable consumer who has spent several hundred dollars for The Dash would understand that the earphones can only be recharged with The Dash Charger. It is unlikely that such a consumer would be misled into believing that OnePlus's USB-C "Dash Charge" is compatible with Bragi's earphones or that OnePlus's charger is made by Bragi. See Multi Time Mach., Inc. v. Amazon.com, Inc., 804 F.3d 930, 940 (9th Cir. 2015) (finding that watches costing "several hundred dollars" were "expensive" and therefore consumers were

more likely to exercise a higher degree of care in making their purchase).[7]  The Court therefore finds that this factor favors OnePlus.

### 7. Defendant's Intent

"When an alleged infringer knowingly adopts a mark similar to another's, courts will presume an intent to deceive the public." Official Airline Guides, Inc. v. Goss, 6 F.3d 1385, 1394 (9th Cir. 1993).  Such knowledge may be actual or constructive.  Brookfield, 174 F.3d at 1059.  Nevertheless, this "factor is only relevant to the extent that it bears upon the likelihood that consumers will be confused by the alleged infringer's mark (or to the extent that a court wishes to consider it as an equitable consideration)." Id.  As a result, the Ninth Circuit has "emphasized the minimal importance of the intent factor." GoTo.com, 202 F.3d at 1208.

Bragi argues that OnePlus was on (1) constructive notice regarding THE DASH mark as early as 2014, based on user postings on the OnePlus Forum and (2) actual notice as of 2016, based on Bragi's cease and desist letter and the USPTO's rejection of OnePlus's trademark application.  Dkt. 40 at 18.  The first point is in dispute, as OnePlus claims that there is no evidence that, in fact, it monitored the internet postings identified by Bragi.  Dkt. 45 at 15.  The second point, however, is uncontested.  OnePlus acknowledges receipt of—and having responded to—Bragi's cease and desist letter.  It is thus clear that by July 2016, OnePlus was on notice of Bragi's ownership and use of THE DASH mark.  See Boldface Licensing + Branding v. By Lee Tillett, Inc., 940 F. Supp. 2d 1178, 1195 (C.D. Cal. 2013) (finding that the intent factor weighed in favor of confusion where the defendant launched its product notwithstanding having received a cease-and-desist letter).  Moreover, in November 2016, the USPTO rejected OnePlus's application to trademark "Dash Charge" due to potential confusion with Bragi's THE DASH mark.  Rosen Decl. Ex. 17, Dkt. 41-1

---

[7] Bragi posits that once OnePlus launches sales through T-Mobile, the consumers will become less sophisticated, resulting in this factor weighing in Bragi's favor.  No evidence is offered to support this assertion.  In addition, as discussed, Bragi does not challenge OnePlus's assertion will not utilize the Marks in connection with its partnership with T-Mobile.

at 44. Thus, the evidence shows that, since 2016, OnePlus has been using THE DASH mark with knowledge that Bragi owns the rights to such mark.

The Court thus concludes that this factor, though minimally important, weighs in favor of Bragi. See GoTo.com, 202 F.3d at 1208.[8]

### 8. Likelihood of Expansion of the Product Lines

"To resolve this factor, [the Court] must determine whether existence of the allegedly infringing mark is hindering the plaintiff's expansion plans." Surfvivor Media, 406 F.3d at 634. "[A] 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." Sleekcraft, 599 F.2d at 354.

Bragi contends that because the parties allegedly sell the "same types of products… [t]here is no reason to believe that either party would not develop products that compete even more directly." Dkt. 40 at 18. As an initial matter, it is questionable whether the parties, in fact, sell the same types of products. Bragi's sells wireless earphones, whereas OnePlus's primary product is a smartphone. The corresponding chargers are simply accessories to those products. That aside, Bragi's mere suggestion that the parties may in the future compete more directly is unsupported and is nothing more than sheer speculation. See Survivor, 406 F.3d at 634 ("[E]xpressed interest in expanding [a] product line [is not enough], mere speculation is not evidence."). This factor therefore weighs in favor of OnePlus.

### 9. Summary

All but one of the Sleekcraft factors weigh against a likelihood of confusion or are neutral. The only factor arguably in favor of Bragi is the intent to infringe, which is of minimal importance under the facts presented. Thus, on balance, the Court finds that Bragi

---

[8] As discussed, OnePlus's knowing use of the Marks is "only relevant to the extent that it bears upon the likelihood that consumers will be confused by the alleged infringer's mark (or to the extent that a court wishes to consider it as an equitable consideration)." Brookfield, 174 F.3d at 1059. Neither side addresses this aspect of the intent to deceive factor.

has failed to demonstrate a likelihood of success on the merits of their claims for trademark infringement.

**B.    LIKELIHOOD OF IRREPARABLE HARM**

The Ninth Circuit no longer presumes irreparable harm upon a showing of likelihood of success on the merits in a trademark infringement case. Flexible Lifeline Sys., Inc. v. Precision Lift, Inc., 654 F.3d 989, 998 (9th Cir. 2011). Instead, to obtain a preliminary injunction, the plaintiff must independently establish a likelihood of irreparable harm. Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc., 736 F.3d 1239, 1249 (9th Cir. 2013). "Evidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm." Id. at 1250. However, "unsupported and conclusory statements regarding harm" that the plaintiff believes it might suffer are insufficient; actual evidence of likely irreparable harm is required. Id. at 1250.

Bragi contends that OnePlus has a "checkered" reputation due to a recent data breach, and that Bragi would suffer harm to its goodwill in the event consumers confuse OnePlus with Bragi. Dkt. 40 at 19-20. In addition, Bragi alleges that it will be unable to "repair the damage to its reputation and goodwill" once OnePlus begins marketing its phones through T-Mobile. Id. These bare assertions of irreparable harm are insufficient to support a preliminary injunction. Bragi's contention that consumers will confuse the two companies is undermined by Bragi's admitted lack of any evidence of actual confusion by customers. In addition, no evidence has been presented to suggest that OnePlus's data breach has had any impact on Bragi's reputation. Finally, Bragi's concerns regarding OnePlus's marketing initiative with T-Mobile are unavailing given that OnePlus ostensibly will not include the use of THE DASH mark.

Separate from the above, the Court finds that Bragi's delay in seeking a preliminary injunction further undermines its claim of irreparable harm. See Oakland Tribune, Inc. v. Chronicle Publ'g Co., Inc., 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm"); 5 McCarthy on Trademarks and Unfair Competition § 30:48.50 (5th ed. 2018) ("In some

cases, a delay by plaintiff in filing suit for infringement or in seeking a preliminary injunction may be sufficient to defeat its claim for a preliminary injunction."). Here, Bragi was placed on notice of OnePlus's potential infringement as early as July 2016, as evidenced by its cease and desist letter to OnePlus. Moser Decl. Ex. 18, Dkt. 41-2. Yet, Bragi waited over two years before seeking a preliminary injunction.

Bragi contends that it did not seek immediate injunctive relief sooner because "OnePlus told Bragi that it was willing to stop using the infringing mark *and* publicly indicated that it was changing its behavior." Dkt. 49 at 3. As support for this contention, Bragi cites a news article, dated May 21, 2018, from www.androidauthority.com, entitled "OnePlus to ditch Dash Charge name after Amazon's successful appeal?" Rosen Decl. Ex. 10, Dkt. 40-10 at 1. The article discusses the potential impact on OnePlus of a then recent ruling by the EU's Intellectual Property Office ("EUIPO"), rejecting OnePlus's application to trademark "Dash Charge." Id. However, there is no discussion in the article regarding OnePlus's future plans for the mark in light of that ruling. But even if such a discussion were present, it is unclear how a purported statement of intention made in May 2018 explains Bragi's two-year delay in seeking injunctive relief.

Equally unsupported is Bragi's claim that, after this suit was filed, OnePlus's prior counsel represented that OnePlus would cease using the DASH mark but never committed to an actual date for the cessation to occur. Dkt. 49 at 4. According to Bragi, these communications occurred in July 2018. See Rosen Decl. ¶ 4. The import of this evidence is unclear. While OnePlus's alleged representations to Bragi may explain the three-month delay between July 2018 and its filing of the instant motion for preliminary injunction, they are not probative of Bragi's reason for taking no legal action until recently to challenge OnePlus's use of the Marks following its cease and desist letter from July 2016. The Court

therefore finds that Bragi's unexplained delay in seeking immediate injunctive relief undermines Bragi's claim of immediate, irreparable harm.[9]

IV. **CONCLUSION**

The Court finds that Bragi has failed to demonstrate a likelihood of confusion, and by extension, a likelihood of success on its claim for trademark infringement. Nor is the Court persuaded by Bragi's claim that it will suffer immediate and irreparable harm in the absence of a preliminary injunction. In view of these conclusions, the Court, in its discretion, finds that a preliminary injunction is not warranted. Accordingly,

IT IS HEREBY ORDERED THAT Plaintiffs' Motion for Preliminary Injunction is DENIED.

IT IS SO ORDERED.

Dated: 1/11/19

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
Senior United States District Judge

---

[9] Because Bragi has failed to establish a likelihood of irreparable harm and success on the merits, the Court need not reach the remaining Winter factors regarding the balance of the equities and the public interest. See Developmental Servs. Network v. Douglas, 666 F.3d 540, 544 (9th Cir. 2011) ("[I]f a plaintiff fails to show that he has some chance on the merits, that ends the matter").